1  Patrice L. Bishop (182256)
   service@ssbla.com
2  STULL, STULL & BRODY
   10940 Wilshire Boulevard
3  Suite 2300
   Los Angeles, CA 90024
4  Tel: (310) 209-2468
   Fax: (310) 209-2087
5

6  Jules Brody
   SSBNY@aol.com
7  STULL, STULL & BRODY
   6 East 45th Street
   New York, NY 10017
8  Tel: (212) 687-7230
   Fax: (212) 490-2022
9

10 Jeffrey Abraham
   jabraham@aftlaw.com
11 ABRAHAM FRUCHTER & TWERSKY LLP
   One Penn Plaza
12 Suite 2805
   New York, NY 10119
   Tel: (212) 714-2444
13 Fax: (212) 279-3655

14 Counsel for Plaintiff

15

16                    UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18

19 ALAN NUSSBAUM, on Behalf of Himself and )   CASE NO.
   All Others Similarly Situated,           )   C 08 00905 JSW
20                                          )   CLASS ACTION
                     Plaintiff,             )
21                                          )   COMPLAINT FOR VIOLATION OF
         v.                                 )   FEDERAL SECURITIES LAWS
22                                          )
   SiRF TECHNOLOGY HOLDINGS, INC.,          )   JURY TRIAL DEMANDED
23 DIOSDADO P. BANATAO, MICHAEL L.          )
   CANNING, KANWAR CHADHA, and              )
24 GEOFFREY RIBAR,                          )   FILE VIA FAX
                                            )
25                   Defendants.            )
                                            )
26

27

28

**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**
**CASE NO.**
Z:\STULL\SIRF\PLD\Complaint 001.wpd

ORIGINAL FILED
08 FEB 12 PM 3:27
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J.
E-FILING
ADR

## SUMMARY AND OVERVIEW

1. This is a securities class action on behalf of all individuals who purchased or otherwise acquired the publicly traded securities of SiRF Technology Holdings, Inc. ("SiRF" or the "Company") between or October 30, 2007 and February 4, 2008, inclusive (the "Class Period"), alleging violations of §10(b) and §20(a) the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b-5 promulgated thereunder. Defendants include SiRF, Chairman of the Board Diosdado P. Banatao ("Banatao"), President and Chief Executive Officer ("CEO") Michael L. Canning ("Canning"), Vice President Kanwar Chadha ("Chadha"), and Chief Financial Officer ("CFO") Geoffrey Ribar ("Ribar"). During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results resulting in SiRF stock traded at artificially inflated prices during the Class Period.

2. The truth was not revealed until after the close of the market on February 4, 2008, when the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for Fourth Quarter and Fiscal 2007," which stated in relevant part:

> Net revenue in the fourth quarter of 2007 was $100.4 million, an increase of 35.3 percent from $74.2 million reported in the fourth quarter of 2006. Net revenue in fiscal 2007 was $329.4 million, an increase of 33.0 percent from $247.7 million reported in fiscal 2006. Gross margin in the fourth quarter of 2007 was 48.1 percent, as compared to 54.7 percent in the fourth quarter of 2006. Gross margin in fiscal 2007 was 50.9 percent, as compared to 54.8 percent in fiscal 2006.
>
> Net income for the fourth quarter of 2007 was $0.7 million, or $0.01 per diluted share, based on 64.3 million diluted weighted average shares outstanding. This compares with net income of $9.1 million, or $0.16 per diluted share, based on 56.1 million diluted weighted average shares outstanding in the fourth quarter of 2006.
>
> Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted share, based on 55.5 million diluted weighted average shares outstanding. This compares with net income of $2.4 million, or $0.04 per diluted share, based on 56.0 million diluted weighted average shares outstanding in fiscal 2006.

3. On February 5, 2008, SiRF common shares declined 54% to $7.36 per share, from the $16.27 per share close on February 4, 2008.

1

CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS
CASE NO.
Z:\STULL\SIRF\PLD\Complaint 001.wpd

## JURISDICTION AND VENUE

4. Jurisdiction is conferred by Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78aa] and 28 U.S.C. §§ 1331, 1337. The claims asserted herein arise under and pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act [15 U.S.C. §§ 78n(a), 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.

5. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) and (c). Venue is proper in this District because the Company has its headquarters in this district and many of the acts and practices complained of herein occurred in substantial part in this District.

6. The Company's principal executive offices are located at 217 Devcon Drive, San Jose, California, where the day-to-day operations of the Company are directed and managed.

7. Further, in connection with the acts, transactions and conduct alleged herein, defendants used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of the national securities exchanges and markets.

## PARTIES

8. Plaintiff Alan Nussbaum purchased SiRF publicly traded securities as described in the attached certification and was damaged thereby.

9. Defendant SiRF manufactures global positioning system ("GPS") chipsets and software for consumer and commercial navigation devices and systems. SiRF is a Delaware Corporation with its principle place of business located at 217 Devcon Drive, San Jose, California. The Company's stock is traded publically on the NASDAQ National Market under the ticker symbol "SIRF."

10. Defendant Banatao is, and at all relevant times was, Chairman of the Board of SiRF. Banatao was also a co-founder of the Company. During the Class Period, while SiRF's stock was artificially inflated by defendants' false statements, Banatao sold 400,000 shares of his SiRF stock for insider proceeds of $9.6 million.

2

11. Defendant Canning is, and at all relevant times was, President and CEO of the Company.

12. Defendant Chadha is, and at all relevant times was, Vice President of Marketing and a director of the Company. Chadha was also a co-founder of the Company.

13. Defendant Ribar is, and at all relevant times was, CFO and Senior Vice President of Finance of the Company.

14. Defendants Canning, Banatao, Ribar and Chadha are collectively referred to herein as the Individual Defendants.

15. The Individual Defendants were at all relevant times during the Class Period controlling persons of SiRF within the meaning of Section 20(a) of the Exchange Act. Because of the Individual Defendants' positions with SiRF, they had access to undisclosed adverse information about its business, accounting policies, financial condition, and present and future business prospects through access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and meetings of the board and committees thereof, and through reports and other information provided to them in connection therewith.

16. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in SiRF's public filings, press releases and other publications as alleged herein are the collective actions of the Individual Defendants. Each of the Individual Defendants, by virtue of his high-level position with SiRF, directly participated in the management of SiRF, and was directly involved in the day-to-day operations of SiRF at the highest level. Each of the Individual Defendants was involved in drafting, producing, reviewing, approving and/or disseminating the materially false and misleading statements and information alleged herein, including SEC filings, press releases, and other publications. Each of the Individual Defendants was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the

Individual Defendants is responsible for the accuracy of the public reports, releases, and statements detailed herein and is therefore primarily liable for the representations contained therein.

17. As officers, directors, and controlling persons of a publicly held company whose common stock was, and is, registered with the SEC, traded on the National Association of Securities Dealers Automated Quotation System ("NASDAQ") National Market, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to SiRF's financial condition and performance, growth, operations, financial statements, business, earnings, management, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of SiRF's publicly traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18. The Individual Defendants, because of their positions of control and authority as officers and controlling persons of SiRF, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to SiRF during the Class Period.

19. Each of the Individual Defendants was privy to confidential proprietary information concerning SiRF and its business, operations, prospects, growth, finances, and financial condition as alleged herein. Each of the Individual Defendants was aware of or recklessly disregarded that materially false or misleading statements were being issued regarding SiRF, and approved or ratified these statements in violation of the federal securities laws. The Individual Defendants caused, allowed and/or participated in the wrongdoing complained of herein in order to continue and prolong a distorted and misleading appearance of SiRF's continued profitability and financial condition and prospects.

## CLASS ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the common stock of SiRF between or October 30, 2007 and February 4, 2008, inclusive against SiRF and

4

certain of its officers and/or directors for violations of the Securities Exchange Act of 1934, inclusive and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. The members of the Class are so numerous that joinder of all members is impracticable. During the Class Period, SiRF had more than 60 million shares of common stock outstanding, which were actively traded on the NASDAQ, under the ticker symbol "SIRF" and tens of millions of shares of common stock were traded during the Class Period. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SiRF or its transfer agent and brokerage firms and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

22. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

23. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by defendants' acts as alleged herein;

    b. whether statements made by defendants to the investing public during the Class Period misrepresented material facts about a.) how the Company awarded options to its

5

1  executives, and b.) whether the Company's financial form 10-K and Proxy Statements, filed with
2  the SEC during the Class Period, contained false and misleading statements; and
3          c.      to what extent the members of the Class have sustained damages and the
4  proper measure of damages.
5      25.     A class action is superior to all other available methods for the fair and efficient
6  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the
7  damages suffered by individual Class members may be relatively small, the expense and burden of
8  individual litigation make it impossible for members of the Class to individually redress the wrongs
9  done to them. There will be no difficulty in the management of this action as a class action.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

26. On October 30, 2007, the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for Third Quarter 2007," which stated in relevant part:

> ... SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its third quarter ended September 30, 2007.
>
> Net revenue in the third quarter of 2007 was $91.2 million, an increase of 43 percent from $63.7 million reported in the third quarter of 2006. Net revenue in the first nine months of 2007 was $229.0 million, an increase of 32 percent from $173.5 million reported in the first nine months of 2006. Gross margin in the third quarter of 2007 was 52.2 percent, as compared to 55.6 percent in the third quarter of 2006. Gross margin in the first nine months of 2007 was 53.7 percent, as compared to 55.7 percent in the first nine months of 2006.
>
> Net loss for the third quarter of 2007 was $16.1 million, or $(0.28) per diluted share, based on 57.0 million diluted weighted average shares outstanding. This compares with net income of $2.6 million, or $0.05 per diluted share, based on 55.6 million diluted weighted average shares outstanding in the third quarter of 2006.
>
> Net loss for the first nine months of 2007 was $11.1 million, or $(0.21) per diluted share, based on 54.0 million diluted weighted average shares outstanding. This compares with net loss of $6.7 million, or $(0.13) per diluted share, based on 50.9 million diluted weighted average shares outstanding in the first nine months of 2006.
>
> \* \* \*
>
> "We believe our Q3 performance has been exceptional. We have once again posted record revenues on record shipment volumes with excellent profitability and strong bookings momentum. Our acquisition of Centrality and broadening of our product portfolio with the System-on-Chip (SoC) products has been enthusiastically

welcomed by customers, and the SoC products are also breaking revenue and shipment volume records," said Dr. Michael Canning, President and CEO.

The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

Q3'2007 Highlights and Business Outlook:

We have successfully closed the merger with Centrality Communications and are integrating our products, platforms and personnel. The resulting combination has exceeded our expectations and has been very well received by customers, vendors and employees alike. We are seeing significant design win momentum at major PND customers for our SoC platforms. We are now working on synergistic extensions of our combined fundamental technology.

Growth in our Automotive business, and particularly in Portable Navigation Devices (PNDs), continues to be very strong and to mirror overall market growth. In Q3, we made record volume shipments to a number of major customers. In addition, many of our customers, including ASUS, Garmin, HP, Magellan, Mio, Siemens VDO and TomTom, launched new platforms using SiRfstarIII or SiRF SoC based products this quarter.

Interest in and demand for our products continues to accelerate in our Wireless business. One of our key tier one customers launched their first new GPS enabled handset which has been qualified at two operators this quarter; and RIMM continues to launch new GPS-enabled products and expand the number of operators using their platform. Multiple handsets based on the SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio ASUS and Amoi, one of the leading local handset manufacturer in China. In July, Chung-Hwa Telecom launched LBS services based on a SiRF SUPL 1.0 AGPS server and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators.

In the consumer and mobile computing market, SiRFstarIII architecture is gaining more momentum. Garmin launched a new generation of their SiRFstarIIII based Edge platforms for cyclists and Magellan launched a new family of SiRFstarIII based TRITON™ handhelds featuring National Geographic's award winning full color topographic maps. One of the leading mobile gaming customers launched a GPS accessory with gaming and navigation software for their mobile gaming platform and we are also starting to see increasing interest from digital camera industry.

27.    Following the release of its Q3 2007 results, SiRF held a conference call during which defendants stated the following:

[CANNING]: Customer interest in our Atlas type and SoC platforms has been very strong, especially in the tier one PND market, and we expect them to be significant contributors to our revenue growth in 2008 and beyond as these and other design wins move into high volume production.

* * *

7

CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS
CASE NO.
Z:\STULL\SiRF\PLD\Complaint 001.wpd

Interest in and demand for our products continues to accelerate in our wireless business. One of our key tier one customers has launched their first new GPS-enabled hand set, which has been qualified at two operators. And one of our leading wireless customers, Research in Motion, continues to launch new GPS-enabled products and expand a number of operators supporting their platform.

Multiple handsets based on SiRFstarIII platforms have also been announced or moved into volume production by customers such as Mio, Mitech, Asus and Amoi, one of the leading local handset manufacturers in China. In addition, our diverse customer base continues to introduce mobile products based on our award winning GPS technology. Of particular note this quarter, many of the tier one handset manufacturers have launched GPS Bluetooth accessory modules based on SiRFstarIII and compatible with a variety of existing handsets, which can provide GPS navigation, mapping and other traffic data to the appropriate Bluetooth-enabled phones.

Our end-to-end location platform continues to gain momentum. For example, LBS services based on a SiRF secure user plain 1.0 AGPS server were launched by Chung-Hwa Telecom in July, and our SiRFstudio development platform for LBS applications is getting good reception at some of the leading operators worldwide.

In our consumer markets segment, Garmin launched a new generation of their SiRFstarIII-based edge platforms for cyclists and Magellan launched a new family of SiRFstar III based TRITON handhelds featuring National Geographic's award winning, full color, topographic maps. We're also experiencing good growth and substantial sustained interest from Asian consumer electronics and computing companies in some of the more mobile applications of GPS into media players, cameras and gaming systems. Already a leading manufacturer has introduced a SiRFstarIII based GPS accessory to a portable gaming system, which is expected to be deployed globally at an attractive price point early in 2008.

With our newly extended product portfolio and a major new operational base in China, we believe there will be substantial growth in this market segment in the next year or so as the use of GPS-based location technology becomes a standard feature in consumer electronics, and we believe that we are extremely well positioned to enjoy that growth.

\* \* \*

Demand for our products is robust across all market segments and we expect to see Q4 revenues in the range of 99 to 102 million with at least 10% of this revenue coming from SoC products. This will bring revenue for the year into the range 328 to 331 million. Assuming a tax rate of 5% to 10%, we are modeling EPS for Q4 in the range 31 cents to 33 cents.

\* \* \*

[ANALYST]: So let's say a full quarter of Centrality in Q4. Will that then depress margin or would the higher revenue level, do you expect gross margin to go up sequentially a little bit?
[CANNING]: We expect to maintain our gross margins. We have done for the last five years, we expect it to continue.

[RIBAR]: In the 54% to 55% range.

8
**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**
**CASE NO.**
Z:\STULL\SIRF\PLD\Complaint 001.wpd

\* \* \*

[CHADHA]: Okay, so on the wireless side we do expect more handsets from tier one customers in '08. We expect '08 to be quite a strong year for our wireless based on all the feedback we are getting from handset partners as well as in operators. We just held a Location 2.0 Summit where we brought together key leaders in the handset industry as well as operators, global operators and all the feedback during the Summit as well as in our private conversation is that 2008 will be a strong year with multiple handsets from tier one customers.

\* \* \*

[ANALYST]: Well then as a follow-up. Did you feel like you've really taken a big brunt of the ASP decline in Q3, so we'll see more modest declines going forward or will we see more of the same?

[CANNING]: Well, you know, there's always competition in the marketplace, and that's something we have expected and forecast for sometime. So it's not surprising that competitors are there. It's not surprising that if they want to try to win business from us, they try to offer lower prices. But we plan to be just as competitive going forward as we have been in the past. And we expect to win more sockets than we lose and to improve the value of the sockets that we win.

[RIBAR]: So I think the other point is clearly, right, we've been able to sustain our market share, sustain our margin, sustain our business model in this pricing environment. So I think we've done an outstanding job over an extended period of time of maintaining our business.

28.     After the release of the Company's Q3 earnings and the accompanying conference call, SiRF's common stock rose from its $23.30 per share close on October 30, 2007, to $29.81 per share on October 31, 2007.

29.     On November 29, 2007 and November 30, 2007, defendant Banatao sold 400,00 shares of his SiRF stock for insider proceeds of $9,964.000.

30.     In January 2008, SiRF's stock steadily declined as the market began to doubt the demand for SiRF's products.

31.     Then, as outlined *supra*, after the market closed on February 4, 2008, the Company issued a press release entitled "SiRF Technology Holdings Inc. Announces Financial Results for the Fourth Quarter and Fiscal 2007." The press release stated, in relevant part:

SiRF Reports Record Revenue

... SiRF Technology Holdings, Inc. (NASDAQ: SIRF), a leading provider of GPS-enabled silicon and premium software location platforms, today reported unaudited financial results for its fourth quarter and year-ended December 31, 2007.

9

CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS
CASE NO.
Z:\STULL\SIRF\PLD\Complaint 001.wpd

> Net revenue in the fourth quarter of 2007 was $100.4 million, an increase of 35.3 percent from $74.2 million reported in the fourth quarter of 2006. Net revenue in fiscal 2007 was $329.4 million, an increase of 33.0 percent from $247.7 million reported in fiscal 2006. Gross margin in the fourth quarter of 2007 was 48.1 percent, as compared to 54.7 percent in the fourth quarter of 2006. Gross margin in fiscal 2007 was 50.9 percent, as compared to 54.8 percent in fiscal 2006.
>
> Net income for the fourth quarter of 2007 was $0.7 million, or $0.01 per diluted share, based on 64.3 million diluted weighted average shares outstanding. This compares with net income of $9.1 million, or $0.16 per diluted share, based on 56.1 million diluted weighted average shares outstanding in the fourth quarter of 2006.
>
> Net loss for fiscal 2007 was $(10.4) million, or $(0.19) per diluted share, based on 55.5 million diluted weighted average shares outstanding. This compares with net income of $2.4 million, or $0.04 per diluted share, based on 56.0 million diluted weighted average shares outstanding in fiscal 2006.
>
> \* \* \*
>
> The assets acquired and liabilities assumed as part of the acquisition of Centrality in August 2007 are reflected in SiRF's consolidated financial statements. The results of Centrality's operations have been included in SiRF's consolidated results of operations since the August 6, 2007 acquisition close date. As SiRF finalizes certain valuation assumptions, adjustments may be recorded in the related purchase price allocations.

32. During the conference call following the earnings release, Canning admitted that defendants had expected gross margins to decline:

> We had always expected that gross margins would start to shift down as ramping of certain products occurred and as competitive influences came into the market. So for the moment, I think, it's probably best to assume that we'll be around 50% gross margin.

33. On February 5, 2008, according to a *Forbes.com* article, Jefferies & Company, Inc. analyst Adam Benjamin "downgraded the stock to 'hold' from 'buy' and lowered his price target to $9 from $32."

34. The true facts, which were known by the defendants but concealed from the investing public during the Class Period, included, but were not limited to:

    a. While the investing public knew the Company had, on August 6, 1007, acquired Centrality Communications, Inc. ("Centrality") for 2.1 million shares of SiRF stock, the investing public did not know that certain of Centrality's products overlapped with SiRF's, which would adversely effect SiRF's own products sales;

b.  SiRF's major customers were not placing sufficient orders for the Company to meet its targets;

c.  Centrality's SoC product line had lower gross margins than SiRF's products and defendants knew that although the Centrality acquisition would increase revenues in Q4, it would also significantly lower SiRF's gross margins;

d.  Competitive pressures were having much more of an adverse impact on the Company than acknowledged by defendants, as SiRF's customers were moving to cellular-enabled products which SiRF could not adequately compete with;

e.  As a result of each of these items, defendants had no basis for their Q3 conference call statements that the Company's EPS would remain steady in Q4.

35.  Defendants' false and misleading statements regarding demand for its products had the intended effect and caused SiRF stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $30.61 per share.

36.  As a direct result of defendants' admissions and the public revelations concerning the truth about demand for SiRF's products and its actual business prospects going forward, SiRF's stock price plummeted 54% on February 5, 2008, to $7.36 per share from the $16.27 per share close on February 4, 2008. This was a one-day decline of $8.91 per share. This drop caused real economic loss to investors who had purchased the stock during the Class Period.

## COUNT I

**For Violations of Section 10(b) of the Exchange Act
and Rule10b-5 Promulgated Thereunder**

**(Against All Defendants)**

37.  Plaintiff repeats and realleges each and every allegation set forth above. During the Class Period, defendants, and each of them, carried out a plan, scheme and course of conduct that was intended to and/or did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate the market price of SiRF common stock; and (iii) cause plaintiff and other members of the Class to buy SiRF stock at artificially inflated prices. In

11

furtherance of this unlawful scheme, plan, and course of conduct, defendants, and each of them, took the actions set forth herein.

38. These defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the buyers of SiRF common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

39. Defendants' material misrepresentations and/or omissions were done knowingly or recklessly.

40. At the time of said misrepresentations and omissions, plaintiff and the other members of the Class were ignorant of the omitted material facts and believed defendants' statements contained in their Form 10-Ks to be completely truthful, candid and not deceptive or misleading or suffering from omissions of material facts. Had plaintiff and the other members of the Class known of the omitted material facts, plaintiff and the other members of the Class would not have bought their SiRF common stock during the Class Period, or, if they had bought such stock during the Class Period, they would not have done so at the artificially inflated prices which they paid for their SiRF common stock which they bought during the Class Period.

41. By virtue of the foregoing, each of the defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

42. As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of SiRF common stock during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act

**(Against All Defendants)**

43. Plaintiff repeats and realleges each and every allegation set forth above.

44. This claim is asserted against the Individual Defendants pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a).

12

45. During the Class Period, Individual Defendants Canning, Banatao, Ribar and Chadha were "controlling persons" of defendant SiRF within the meaning of Section 20(a) of the Exchange Act.

46. The Individual Defendants were "controlling persons" of SiRF because, due to the officer and/or director positions they held with SiRF, they had the influence and power over SiRF to cause, and they did cause, SiRF to engage in the wrongful conduct complained of herein, and because they had the power to have prevented SiRF from engaging in the unlawful conduct alleged herein, but they purposely, intentionally and recklessly did not use that power to do so.

47. As set forth above in Count I, SiRF violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by its acts and omissions as alleged in this Complaint. By virtue of their status as a "controlling person" of SiRF, the Individual Defendants are liable, to the same extent as is SiRF for its violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

1. Determining that this action is a proper class action, certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and his counsel as class counsel;

2. Awarding compensatory damages in favor of plaintiff and the other class members against all defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

//
//
//
//

4. Awarding such other and further relief as this Court may deem just and proper including any extraordinary equitable relief and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the defendants' assets to assure plaintiff and the members of the Class have an effective remedy.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 12, 2008

Patrice L. Bishop
STULL, STULL & BRODY

By: *Patrice Bishop*
Patrice L. Bishop
10940 Wilshire Boulevard
Suite 2300
Los Angeles, CA 90024
Tel:  (310) 209-2468
Fax:  (310) 209-2087

Jules Brody
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:  (212) 687-7230
Fax:  (212) 490-2022

Jeffrey Abraham
ABRAHAM FRUCHTER & TWERSKY LLP
One Penn Plaza
Suite 2805
New York, NY 10119
Tel:  (212) 714-2444
Fax:  (212) 279-3655

Counsel for Plaintiff

# CERTIFICATION OF PLAINTIFF
## PURSUANT TO THE FEDERAL SECURITIES LAWS

Alan Nussbaum hereby certifies under penalties of perjury that the following is true and correct to the best of my knowledge, information and belief:

1. I have reviewed the attached Class Action Complaint For Violations of Federal Securities Laws and have authorized counsel to file the complaint.

2. I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. To the best of my knowledge, the following are all of my transactions in the securities of SiRF Technology Corp. during the proposed class period are set forth on Exhibit A attached hereto.

5. I have not sought to serve as a class representative in the following other cases brought under a provision of the federal securities laws within the last three years:

6. I will not accept any payment for serving as class representative on behalf of the class beyond my pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

Dated: February ___, 2008

_____
Alan Nussbaum

Exhibit A

| Date | Action (Buy or Sell) | Number of Shares | Price Per Share |
|---|---|---|---|
| 11/29/2007 | Buy | 1,150 | $24.05 |
| 11/29/2007 | Buy | 4,000 | $24.55 |
| 12/12/2007 | Buy | 1,000 | $24.53 |
| 12/28/2007 | Buy | 1,000 | $24.70 |
| 01/14/2008 | Buy | 200 | $17.75 |
| 01/16/2008 | Sell | 1,000 | $16.90 |
| 01/17/2008 | Sell | 1,000 | $16.00 |
| 02/04/2008 | Sell | 4,000 | $13.00 |
| 02/04/2008 | Sell | 1,350 | $13.00 |